IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DARIA MILEVA, individually and on behalf of all others similarly situated | ) ) ) | |
| | ) | Case No. 20-cv-123 |
| Plaintiff, | ) ) | Judge Robert M. Dow, Jr. |
| v. | ) ) ) | |
| TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., FIFTH THIRD BANK, JOHN DOES 1–25 | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Daria Mileva ("Plaintiff") filed this case, alleging that Fifth Third Bank and Equifax Information Services, LLC ("Equifax"; collectively "Defendants")[1] violated her rights under the Fair Credit Reporting Act ("FCRA"). Defendants moved for summary judgment [55; 59]. For the reasons explained below, Defendant Fifth Third Bank's motion for summary judgment [55] is granted and Defendant Equifax's motion for summary judgment [59] is denied. This case is set for a telephonic status hearing on April 14, 2021 at 10:00 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

**I.      Background**

These facts are taken from the parties' respective Local Rule 56.1 statements and supporting exhibits [67; 75; 80]. Courts are also entitled to consider any material in the record,

---

[1] Plaintiff previously filed stipulations of dismissal with prejudice with respect to Defendants Experian Information Solutions [60] and Trans Union, LLC, [79].

even if it is not cited by either party. Fed. R. Civ. P. 56(c)(3). In evaluating a motion for summary judgment, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016). "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *NAR Business Park, LLC v. Ozark Automotive Distributors, LLC*, 430 F. Supp. 3d 443, 446–47 (N.D. Ill. 2019) (quotation marks and citation omitted).

In 2009, Plaintiff executed and delivered a promissory note and mortgage to Defendant Fifth Third Bank to finance the purchase of her home. [70-1, at ¶ 5]. The mortgage requires Plaintiff to make monthly periodic payments, and it provides that "[s]uch payments shall be applied to each Periodic Payment in the order in which it became due." [55-4, at 20]. In May 2017, Plaintiff fell behind on her monthly mortgage payments. [70-1, at ¶ 7]. She made a payment in June 2017. [77-1, at ¶ 5]. This payment was applied to the May 2017 delinquency, which in turn created a delinquency for June of 2017. [*Id.*]. She also made a payment in July 2017, which was applied to her June 2017 delinquency, creating a delinquency for July 2017.[2] [*Id.*, at ¶ 6]. Plaintiff did not make her monthly mortgage payment for August, September, October, or November 2017. [84-1, at ¶ 6]. In November 2017, her July 2017 payment remained due and her loan was four months delinquent. [70-1, at ¶ 9].

On November 2, 2017, Defendant Fifth Third Bank submitted a written offer to Plaintiff to modify her mortgage agreement under a proposed Trial Period Plan ("Plan"). [*Id.*, at ¶ 8].

---

[2] In her sur-reply, Plaintiff argues that Defendant Fifth Third Bank applied the trial period payments to the "outstanding delinquencies in December 2017, January 2018 and February 2018" because her credit reports reflected 120-day delinquencies instead of 180-day delinquencies. [84, at 3, 9]. However, her credit reports reported delinquencies of "120+ Days Late" and not merely 120 days late. [*See* 70-4; 70-5; 70-6]. This argument therefore fails.

Under the Plan, if Plaintiff made three monthly trial period payments, which were lower than her mortgage payments, she would be eligible for a modification of her loan. [*Id.*, at ¶ 10]. Specifically, the offer letter stated: "If you successfully complete the Trial Period Plan by making the required payments by the due dates, you will need to submit signed copies of your modification agreement to us. Once we sign the modification agreement, you will receive a modification * * *." [55-4, at 37]. The offer letter also stated: "You agree that we will hold the trial period payments in an account until sufficient funds are in the account to pay your oldest delinquent monthly payment." [70-1, at ¶ 12]. Under the Plan, Plaintiff's current mortgage note, mortgage security instrument, and loan and mortgage requirements would remain in full effect, and Plaintiff agreed that nothing in the Plan would "be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents." [*Id.*, at ¶ 13]. The FAQ section of the offer letter stated:

> Credit Reporting: We will continue to report the delinquency status of your loan to credit reporting agencies as well as your entry into a Trial Period Plan in accordance with the requirements of the Fair Credit Reporting Act and the Consumer Data Industry Association requirements. CREDIT SCORING COMPANIES GENERALLY CONSIDER THE ENTRY INTO A PLAN WITH REDUCED PAYMENTS AS AN INCREASED CREDIT RISK. AS A RESULT, ENTERING INTO A TRIAL PERIOD PLAN MAY ADVERSELY AFFECT YOUR CREDIT SCORE, PARTICULARLY IF YOU ARE CURRENT ON YOUR MORTGAGE OR OTHERWISE HAVE A GOOD CREDIT SCORE.

[55-4, at 41].

Plaintiff made her first trial period payment in December 2017; because her payment was not sufficient to satisfy a regular contractual payment under the mortgage note, Defendant Fifth Third Bank placed the payment in a suspense account. [70-1, at ¶ 18]. Plaintiff made her second trial period payment in January 2018. Defendant Fifth Third Bank then transferred funds out of the suspense account to fully satisfy the July 2017 installment on Plaintiff's mortgage note. [*Id.*, at ¶ 20]. Plaintiff made her third trial period payment in February 2018, and Defendant Fifth Third

3

Bank transferred funds out of the suspense account to fully pay the August 2017 installment. [*Id.*, at ¶ 22]. Plaintiff did not make a payment in March 2018. [*Id.*, at ¶ 24].

Although Plaintiff was making her trial period payments, her account remained delinquent and Defendant Fifth Third Bank reported this delinquency to credit reporting agencies (CRA's) during December 2017, January 2018, and February 2018. [*Id.*, at ¶¶ 19, 21, 23]. Defendant Fifth Third Bank also reported her account as delinquent for March 2018. [*Id.*, at ¶ 24]. The parties dispute whether Defendant Fifth Third Bank reported any notation of the trial period payments. [*Id.*, at ¶¶ 19, 21, 23]. Defendant Fifth Third Bank submitted an affidavit from Coral Haney, an Exceptions Processing Supervisor at the bank. [55-4]. She avers that a true and accurate summary of Fifth Third Bank's reporting on the loan from September 20, 2017, to July 31, 2018, is attached to her affidavit. [*Id.*, at 6 ¶ 19]. This summary lists the code "AC" in the special comment field for December 2017, January 2018, and February 2018. [*Id.*, at 47]. It lists "CO" in the special comment field from March 2018 onward. [*Id.*]. The 2019 Credit Report Resource Guide, created by the Consumer Data Industry Association, instructs:

> If the consumer was delinquent (at least 30 days past the due date) prior to the trial period and the reduced payments do not bring the account current, report the Account Status Code that reflects the appropriate level of delinquency. Report the trial period payment in the Scheduled Monthly Payment Amount field. Special Comment Code 'AC' (Paying under a partial payment agreement) should also be reported.

[*Id.*, at 44]. It also states that, for modified loans, "Special Comment Code **CO** (Loan modified) may be reported." [*Id.*, at 45].

In her Local Rule 56.1 response statement, Plaintiff disputes whether "Defendant Fifth Third Bank *ever* reported special code 'AC' to the credit bureaus for the purpose of acknowledging that Plaintiff was tendering partial payments under a partial payment plan agreement with Fifth Third Bank." [70-1, at ¶¶ 19, 21, 23]. She also disputes whether Defendant Fifth Third Bank

4

reported the CO code. [*Id.*, at ¶ 29]. In support, Plaintiff cites to her credit reports from Equifax, Transunion, and Experian, which contain no AC or CO code or other reference to the trial period payments. [*Id.*, at ¶¶ 19, 21, 23, 29 (citing [70-4; 70-5; 70-6])]. Defendant argues that Plaintiff's reliance on these credit reports is flawed because the contents of the credit reports do not necessarily speak to what was reported to the CRAs. [77, at 5, 9–10]. The court agrees. Once Defendant Fifth Third Bank properly supports its factual assertion, as it did here, Plaintiff must "submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). "It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001). Here, Plaintiff's argument is based on the speculation that because her credit reports did not list the trial period payments or special codes, then Defendant Fifth Third Bank failed to report them. In the face of Defendant Fifth Third Bank's evidentiary showing, this speculation fails to create a genuine issue for trial. *Id.*

On April 10, 2018, Defendant Fifth Third Bank sent Plaintiff a letter indicating that her request for a loan modification was approved, effective May 1, 2018. [55-4, at 49–50]. Plaintiff entered into the loan modification agreement later in April. [*Id.*, at 55]. On January 29, 2019, Plaintiff sent Defendant Equifax a letter requesting that inaccurate information be removed from her credit report. [59-4, at 2]. On February 11, 2019, Defendant Equifax sent a copy of the January 29 letter and an Automated Consumer Dispute Verification ("ACDV") form to Defendant Fifth Third Bank indicating that Plaintiff disputed the account status it reported. [72-1, at ¶ 10]. Defendant Fifth Third Bank timely investigated the dispute and on February 25, 2019, reported in the ACDV to Defendant Equifax that its prior reporting was accurate and complete. [70-1, at

¶¶ 34–35]. For the months of December 2017, January 2018, and February 2018, the ACDV includes the following notation: "[049] PAY NG UNDER A PARTIAL PAYMENT AGREEMENT."[3] [59-5, at 6–7]. Defendant Equifax reported the results of Defendant Fifth Third's investigation to Plaintiff. [70-1, at ¶ 36].

On March 15, 2019, Plaintiff downloaded a copy of her credit report from Defendant Equifax. The payment history section indicates that Plaintiff was "30 Days Late" in May, June, and July of 2017; Plaintiff was "60 Days Late" in August 2017; Plaintiff was "90 Days Late" in September 2017; and that Plaintiff was "120+ Days Late" in October, November, and December 2017 and in January, February, and March 2018. [70-5, at 3]. The credit report provides no indication that Plaintiff made payments under a Trial Period Plan in either December 2017, January 2018, or February 2018. [*Id.*]. Defendant Equifax disputes this conclusion, suggesting that its credit report did include information about the Plan. [78-1, at ¶ 24]. However, in doing so, Defendant Equifax cites to the ACDV and not the credit report. [*Id.*]. It is true that the ACDV notes that Plaintiff was paying under a partial payment agreement. [59-5, at 6–7]. But the Court must draw all factual inferences in favor of Plaintiff, and Defendant Equifax makes no argument as to why a reasonable jury must conclude that because the ACDV noted the partial payments that therefore the Equifax credit report did so as well. As such, the Court concludes that—drawing all factual inferences in favor of Plaintiff—a reasonable jury could find that the Equifax credit report did not contain any notation or other indication of the Plan or any of the trial period payments.

Plaintiff then filed this suit. In it, she alleges that Defendant Fifth Third Bank negligently and willfully violated § 1681s-2(b) of the FCRA by failing to fully investigate the dispute and by

---

[3] In its reply brief, Defendant Fifth Third Bank states that the "fact that this 'paying under a partial payment agreement' language was included in Fifth Third Bank's original reporting is indicated by the regular, non-boldface type that is used for these notations in the ACDV." [77, at 4 n.1]. Although this could be true, Defendant Fifth Third Bank fails to cite to anything in the record to support this reading of the ACDV.

continuing to report inaccurate and misleading information to CRAs. [1, at ¶¶ 117–138]. She alleges that Defendant Equifax negligently and willfully violated § 1601(e) of the FCRA by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of credit reports and credit files. [*Id.*, at ¶¶ 89–102]. Defendants Fifth Third Bank and Equifax moved for summary judgment. [55; 59].

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "On a motion for summary judgment, the moving party has the burden of demonstrating that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law." *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 (7th Cir. 1994). "Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney*, 526 F.3d at 1104 (quoting Fed. R. Civ. P. 56(c)). As noted above, in evaluating a motion for summary judgment, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bell*, 827 F.3d at 704.

## III. Analysis

### A. Fifth Third Bank's Motion for Summary Judgment

The FCRA creates responsibilities for entities like Defendant Fifth Third Bank that furnish information to consumer reporting agencies. 15 U.S.C. § 1681s-2. Specifically, when a CRA

notifies a "furnisher" of a dispute related to the accuracy or completeness of information it provided, the furnisher has a duty to "conduct an investigation with respect to the disputed information," "review all relevant information provided" to it by the consumer reporting agency, and "report the results of the investigation to the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(A)–(C). If the investigation determines that the information is incomplete or inaccurate, the furnisher must report those results to CRAs. 15 U.S.C. § 1681s-2(b)(1)(D). Furnishers must "review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression." *Levine v. JPMorgan Chase & Co.*, 2013 WL 5745050, at *1 (E.D. Wis. Oct. 22, 2013) (quoting *Saunders v. Branch Banking & Tr. Co. of Vir.*, 526 F.3d 142, 148 (4th Cir. 2008)); see also *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) ("[W]e agree with the three Courts of Appeals to have considered the question that even if the information is technically correct, it may nonetheless be inaccurate if, through omission, it 'create[s] a materially misleading impression.'" (alteration in original) (quoting *Saunders*, 526 F.3d at 148)).

The parties agree that in order to make a claim under § 1681s-2, a plaintiff must make a threshold showing that a furnisher provided inaccurate or misleading information. [55-1, at 12–13; 70, at 8–9]; see also *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) ("[A] plaintiff asserting a claim against a furnisher for failure to conduct a reasonable investigation cannot prevail on the claim without demonstrating that *had* the furnisher conducted a reasonable investigation, the result would have been different; *i.e.*, that the furnisher would have discovered that the information it reported was inaccurate or incomplete."); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 38–39 (1st Cir. 2010) (determining that the plaintiff's "failure to demonstrate

actual inaccuracies in the furnished information that a reasonable investigation could have discovered is a separate, sufficient basis for summary judgment"); *Zahran v. Bank of Am.*, 2016 WL 826402, at *4 (N.D. Ill. Mar. 3, 2016) ("To prevail in an FCRA claim against a furnisher of credit information under section 1681s-2b, plaintiffs must show the 'factual inaccuracy' of the information the furnisher provided.").

Defendant Fifth Third Bank argues that it is entitled to summary judgment because Plaintiff cannot meet this burden of establishing that its reporting was inaccurate, incomplete, or misleading. Plaintiff argues that Defendant Fifth Third Bank's reporting is inaccurate or misleading in three ways: (1) the reporting shows that Defendant Fifth Third Bank failed to apply trial period payments to the most delinquent payment, as required by the mortgage and Plan, (2) the reporting failed to include any indication of the trial period payments or Plan, and (3) the reporting failed to indicate that Plaintiff did not pay her March 2018 loan only because Defendant Fifth Third Bank delayed in finalizing the loan modification agreement.[4]

### 1. Application of Payments to Oldest Delinquency

Plaintiff argues that Defendant Fifth Third Bank failed to apply the trial period payments to the earliest delinquent payment and that this failure caused it to inaccurately report Plaintiff's payment history. Specifically, Plaintiff contends that Defendant Fifth Third Bank should have applied the trial period payments first to the May 2017 delinquency and then to the June 2017 delinquency. [70, at 15]. If Defendant Fifth Third Bank had done this, Plaintiff continues, "there would have been no delinquencies at all for those two months" and "each of the months that had been subsequently delinquent would have been reduced accordingly." [*Id.*, at 18].

---

[4] In her response, Plaintiff made clear that she "is not arguing that Defendant Fifth Third Bank should have entirely excluded the delinquencies for December 2017, January 2018 and February 2018." [70, at 14]. Instead, she alleges that failure to report the Plan or her trial period payments was materially misleading. [*Id.*].

9

However, Plaintiff's argument does not reflect the undisputed facts explained above. Recall that Plaintiff failed to make a May 2017 payment. [70-1, at ¶ 7]. She made a payment in June 2017. [77-1, at ¶ 5]. This payment was applied to the May 2017 delinquency, which in turn created a delinquency for June of 2017. [*Id.*]. She also made a payment in July 2017, which was applied to her June 2017 delinquency, creating a delinquency for July 2017. [*Id.*, at ¶ 6]. Plaintiff did not make her monthly mortgage payment for August, September, October, or November 2017. [84-1, at ¶ 6]. In January 2018, Plaintiff's trial period payments were sufficient to satisfy a full payment under her mortgage, and Defendant Fifth Third Bank applied the payment to the July 2017 delinquency. [77-1, at ¶ 9]. Because Plaintiff had already paid the May 2017 and June 2017 delinquencies with her June 2017 and July 2017 payments, the July 2017 delinquency was the oldest delinquency in January 2018. Therefore, Defendant Fifth Third Bank did not misapply the trial period payments.

### 2. Reporting of Trial Period Payments

Plaintiff next argues that Defendant Fifth Third Bank's reporting was materially misleading because it failed to report her trial period payments. [70, at 7–14]. In doing so, Plaintiff relies on *Pittman v. Experian Info. Solutions., Inc.*, 901 F.3d 619 (6th Cir. 2018), where the Sixth Circuit found that "failing to report the existence of" a trial loan modification plan and related payments "constitutes incomplete reporting," *id.* at 639. *Pittman* reasoned that reporting that the plaintiff "was delinquent on his loan payments without reporting the" trial modification plan "implies a much greater degree of financial irresponsibility than was present." *Id.* Here, Plaintiff first argues that, like the furnishers' reports in *Pittman*, Defendant Fifth Third Bank's reports did not include any notation of the trial period payments. [70, at 11–12]. However, as explained above, even when construing the record in the light most favorable to Plaintiff, the evidence shows that

Defendant Fifth Third Bank reported the AC code to CRAs, and this code indicates that a consumer is paying under a partial payment agreement.

Next, Plaintiff suggests that even if Defendant Fifth Third Bank reported the AC code, the information is still misleading. [*Id.*, at 12–14]. She argues that compliance with the Credit Report Resource Guide "is not the equivalent of compliance with the FCRA." [*Id.*, at 12]. However, even if compliance with the Credit Report Resource Guide is not *per se* dispositive, here, the inclusion of the AC code leaves no room for doubt regarding whether Defendant Fifth Third Bank reported that Plaintiff here was paying under a partial payment agreement. [55-4, at 44]. Plaintiff also suggests that the reporting of the AC code is "at most a temporary notation * * * which eventually fell off the record" because even if the code had been included on her credit report for the duration of the Plan, the code would have disappeared after her loan was modified. However, this argument gets at whether the CRAs accurately reported the information in credit reports, not whether Defendant Fifth Third Bank accurately reported information to the CRAs. Because there is no genuine issue of fact as to whether Defendant Fifth Third Bank reported the fact that Plaintiff was making payments under a partial payment agreement, it is entitled to summary judgment on this point.

Moreover, even if the AC code were insufficient, Defendant Fifth Third Bank would nevertheless be entitled to summary judgment on this point. The ACDV explicitly states that Plaintiff was paying under a partial payment agreement for December 2017, January 2018, and February 2018. [59-5, at 6–7]. It is true that, as explained above, *supra* note 2, the record does not compel finding that this language was included in Defendant Fifth Third Bank's initial reporting. However, "consumers are precluded 'from enforcing the requirement that furnishers, under § 1681s-2(a), initially provide complete and accurate consumer information to a CRA.'"

11

*Pittman*, 901 F.3d at 628 (quoting *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012)). In other words, "[c]onsumers have no private right of action against furnishers for reporting inaccurate information to CRAs regarding consumer accounts." *Felts*, 893 F.3d at 1312. Instead, consumers have a private right of action for a violation of the FCRA's requirement that furnishers "conduct an investigation following notice of a dispute." *Id.* Thus, even if the statement that Plaintiff was paying under a partial payment agreement was included on the ACDV only after Defendant Fifth Third Bank's investigation, the initial omission would not give rise to a private right of action. Further, because the statement was on the ACDV at least after the investigation, the record does not support a finding that the investigation was unreasonable as to this point.

### 3. March 2018 Reporting

Plaintiff argues that Defendant Fifth Third Bank's reporting was materially misleading because it reported the fact that her account was delinquent in March 2018 but did not report that Plaintiff's failure to make a payment for this month was "due exclusively to Defendant's delay in approving the mortgage, as no payment was due at that time." [70, at 14]. Plaintiff also asserts that "[n]o special code 'CO' was reported for this month either." [*Id.*]. However, as explained above, for March 2018 Defendant Fifth Third Bank did report a CO code, indicating a modified loan. Further, it is inaccurate to say no payment was due at that time. In support of this statement, Plaintiff cites to the section of Haney's affidavit that states "[n]o payment was made by Plaintiff in March 2018, nor was a payment due under the Plan." [*Id.*; 55-4, at 7 ¶ 24]. But just because a payment was not due under the Plan does not mean that no payment was due at all. The Plan offer letter makes clear that the terms of Plaintiff's original mortgage remained in effect. For example, the FAQ section stated that "[t]he trial period is temporary, and your existing loan and loan requirements remain in effect and unchanged during this time." [55-4, at 41]. It also specifies that

the loan modification would not occur automatically, and instead that after Plaintiff completed the Plan, Plaintiff would need to submit signed copies of the modification agreement to modify the loan. [*Id.*, at 37]. Finally, even if no payment was due in March 2018, it isn't accurate to say that her account was not delinquent in March 2018. Instead, at that time, her account was delinquent dating back to September 2017. [See 70-1, at ¶ 22 (explaining that the February 2018 payment was applied to pay the August 2017 delinquency)]. Because Defendant did report the CO code and Plaintiff's original mortgage terms remained in full effect for March 2018, there is no question of fact as to whether Defendant's March 2018 reporting was accurate and complete.

\* \* \*

As Plaintiff failed to make a threshold showing that Defendant Fifth Third Bank provided inaccurate or misleading information, Defendant Fifth Third Bank is entitled to summary judgment. See, *e.g.*, *Felts*, 893 F.3d at 1313.

### B. Equifax's Motion for Summary Judgment

Plaintiff alleges that Defendant Equifax violated § 1601e of the FCRA, which requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information" in credit reports. 15 U.S.C. § 1681e(b). She also alleges that Defendant Equifax violated § 1681i(a) of the FCRA, which provides that if a consumer disputes the accuracy of a credit report, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). "In order to state a claim under either Section 1681e(b) or Section 1681i(a), Plaintiff must allege that: '(1) inaccurate information was included in [her] consumer credit reports; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) [she] suffered

13

injury; and (4) the injury was caused by the inclusion of the inaccurate entry.'" *Hupfauer v. Citibank, N.A.*, 2016 WL 4506798, at *3 (N.D. Ill. Aug. 19, 2016) (alterations in original) (quoting *Moline v. Experian Info. Sols., Inc.*, 289 F. Supp. 2d 956, 958 (N.D. Ill. 2003)). Thus, as with her claims against Defendant Fifth Third Bank, to proceed with her claims against Defendant Equifax, Plaintiff must "prove that something in his credit report was inaccurate, or at least misleading, to show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b) or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i." *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013) (internal citations omitted). Defendant Equifax argues that it is entitled to summary judgment (1) because its credit report is accurate [59-1, at 5–8] and (2) because Plaintiff's claims amount to legal disputes between her and Defendant Fifth Third Bank [*id.*, at 8–11].

In response to Defendant Equifax's first argument, Plaintiff contends that Defendant Equifax included inaccurate information on her credit report because (1) it did not reflect the application of her trial period payments to the oldest delinquency and (2) it did not reflect the existence of the Plan or trial period payments.[5] As discussed above, Defendant Fifth Third Bank properly applied her payments, and therefore Plaintiff's first argument fails.

Next, Plaintiff argues that her Equifax credit report is materially misleading because it does not include any information about the Plan or trial period payments.[6] Defendant Equifax claims

---

[5] Unlike her response to Defendant Fifth Third Bank's motion for summary judgment, Plaintiff's response to Defendant Equifax's does not include an argument about the March 2018 reporting.

[6] At one point in her response brief, Plaintiff states that she "disputes" the fact that "the reported delinquencies for December 2017, January 2018 and February 2018 associated with the original mortgage were accurate." [72, at 1]. She later states that if Equifax's credit report were accurate, "she never would have been reported as delinquent on her credit report" for those months. [*Id.*, at 13]. However, she does not explain the basis for this dispute, and she later states that "Plaintiff is not arguing that Defendant Equifax should have entirely excluded the delinquencies for December 2017, January 2018 and February 2018. Rather, Plaintiff is alleging that the failure to note that Plaintiff had fully met the terms of the [Plan]

14

that it did report that Plaintiff was paying under a partial payment agreement. [78, at 6]. However, as discussed above, Defendant Equifax cites to the ACDV in support as opposed to its credit report, and there is a triable issue of fact on whether Defendant Equifax reported the Plan or trial period payments on Plaintiff's credit report. Defendant next suggests that even if its reporting did not include information about the trial period payments or Plan, the credit report is nevertheless not misleading. Specifically, Defendant Equifax questions Plaintiff's assertion that "creditors were supposedly 'given a much different credit profile' of her"; it argues that "Plaintiff is not a creditor and has no basis for speculating about what a creditor would think upon reading her consumer report." [78, at 5]. However, the standard for determining inaccuracies under the FCRA includes whether the information "create[s] a materially misleading impression." *Levine*, 2013 WL 5745050, at *1 (quoting *Saunders*, 526 F.3d at 148); see also *Seamans*, 744 F.3d at 865. Here, although Plaintiff's account was delinquent in December 2017, January 2018, and February 2018, Plaintiff was making payments under the Plan and actively working with Defendant Fifth Third Bank to enter into a modified agreement. The Court agrees with *Pittman* that the failure to report the existence of the Plan or the trial period payments creates at least a triable issue of fact as to whether the Equifax credit report created a materially misleading impression about Plaintiff's payment and credit history. See *Pittman*, 901 F.3d at 639.

Defendant Equifax next argues that the Court should dismiss Plaintiff's claims against it because the claims ask the Court to resolve a legal dispute between Plaintiff and Defendant Fifth Third Bank. [59-1, at 8–11]. Defendant Equifax is correct that the FCRA does not require CRAs to resolve legal disputes between consumers and creditors. See *Denan v. Trans Union LLC*, 959

---

materially misleads potential creditors as to the 120 day and 180 [day] delinquencies on those reports." [*Id.*]. Interpreting Plaintiff's brief as a whole, the Court concludes Plaintiff argues that the credit report was inaccurate for failing to report the trial period payments—not for reporting her account as delinquent in December 2017, January 2018, and February 2018.

F.3d 290, 296 (7th Cir. 2020) (joining the "First, Ninth, and Tenth Circuits in holding that a consumer's defense to a debt 'is a question for a court to resolve in a suit against the [creditor,] not a job imposed upon consumer reporting agencies by the FCRA" (alteration in original) (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010))). Defendant Equifax argues that to resolve Plaintiff's dispute would require it to make determinations regarding the legal documents pertaining to Plaintiff's mortgage and modification, such as whether Defendant Fifth Third Bank "agree[d] to consider Plaintiff's payments under the trial plan as on-time payments under the mortgage loan." [59-1, at 10]. However, the potentially misleading information in the Equifax credit report—the failure to report the trial period payments—does not rest on a legal dispute between Plaintiff and Defendant Fifth Third Bank. In sum, both of Defendant Equifax's arguments fail: there is a triable issue of fact as to whether its credit report was accurate, and Plaintiff's claim does not rest on a legal dispute between her and Defendant Fifth Third Bank. Defendant Equifax therefore fails to demonstrate that it is entitled to summary judgment. See *Green v. Whiteco Indus., Inc.*, 17 F.3d at 201.

**IV. Conclusion**

For the reasons explained above, Defendant Fifth Third Bank's motion for summary judgment [55] is granted and Defendant Equifax's motion for summary judgment [59] is denied. This case is set for a telephonic status hearing on April 14, 2021 at 10:00 a.m. Participants should use the Court's toll-free, call-in number 877-336-1829, passcode is 6963747.

Dated: March 29, 2021

Robert M. Dow, Jr.
United States District Judge